IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEVON J. PARKER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:12-cv-00893 |
| CORRECTIONS CORP. OF AMERICA, *et al.* | ) ) | Judge Trauger |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Devon Parker, proceeding *pro se*, brings suit under 42 U.S.C. § 1983. The plaintiff is a state prisoner incarcerated at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee. Because he is a prisoner who proceeds *in forma pauperis* against government officials, the complaint is before the court for initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Also before the court is the plaintiff's motion for leave to correct clerical mistake in the case caption, which the court will grant by separately entered order.

### I.  FACTUAL ALLEGATIONS

The plaintiff names seventeen defendants in this action, as follows: Corrections Corporation of America ("CCA"); the Tennessee Department of Correction ("TDOC"); TDOC Commissioner Derrick Schofield; TDOC Deputy Commissioner Jason Woodall; TDOC Inmate Program Specialist Janice Hoff; Commissioner Designee Jeff Butler; HCCF Warden Joe Easterling; HCCF Chief Unit Manager Deanne Mills; HCCF Unit Manager Dorothy Robinson; HCCF Unit Manager Joanne Henson; HCCF Job Coordinator Kristy Lake; Senior Correctional Officer and Grievance Chairperson LaTaya Brown; D.H.O. [sic] Senior Correctional Officer Natasha Taylor; Senior Correctional Officer Percy Herron; HCCF Case Manager Latriver Lanier; HCCF Case Manager April McKinnie; and HCCF Mail Clerk Ms. Hambree. All non-entity defendants are sued in both their official and individual capacity.

The plaintiff alleges that he filed a series of grievances beginning March 3, 2012 (against defendants

Henson and Lake) based on violations of state law and prison regulations concerning the placement of inmates in jobs or school classes. He alleges his initial grievance was upheld on appeal by Warden Easterling through Grievance Chairperson LaTaya Brown, in the form of a directive that the plaintiff be moved to the top of the register for job openings. He alleges that defendants Lake and Henson failed to comply with that directive and the plaintiff still was not placed in an open job position. Thereafter, the plaintiff filed a second grievance based on the prison officials' failure to comply with the Warden's directive. That grievance was denied, and the denial was upheld on appeal by an "illogical and unlegible" response from Warden Easterling. The plaintiff appealed the denial of that grievance, to which he received a response from Deputy Commissioner Jason Woodall. Woodall, however, made no effort to address the plaintiff's complaints concerning the violation of the Warden's directive. The plaintiff alleges that Lake and Henson's failure to comply with the directive issued by the Warden as a result of the first grievance, and the various other defendants' failure to enforce that directive after the plaintiff filed his second grievance, deprived him due-process rights protected by the Fourteenth Amendment.

The plaintiff filed a third grievance objecting to the fact that the individuals against whom his first two grievances were filed, defendants Henson and Lake, were assigned to handle his second "emergency" grievance. The plaintiff alleges that at the time the Warden's directive was issued, there were "at least six (6) to eight (8) job positions available," but that Henson and Lake immediately filled those positions with other inmates, in derogation of the Warden's directive and in retaliation for the plaintiff's having filed his grievance. The plaintiff's third grievance alleged that Henson should not have been assigned to investigate a grievance against herself.

On March 22, 2012, the plaintiff wrote a letter to Inmate Program Specialist Janice Hoff, addressing the continued failure of Henson and Lake to assign him to a job position, the "monopolization" of unassigned jobs by inmates who already had jobs, in violation of state law and prison regulations. The plaintiff alleges that defendant Hoff's response was unsatisfactory insofar as she brushed off his claims without addressing the substance of his complaints.

On June 4, 2012, the plaintiff wrote to Commissioner Schofield inquiring as to why he had not received a response concerning his numerous grievances. Commissioner Schofield's response confirmed

the response the plaintiff had already received from Jason Woodall, without conducting any further investigation or inquiry into the plaintiff's allegations.

On March 12, 2012, approximately four days after Warden Easterling upheld the plaintiff's first grievance concerning job placement, defendants Latriver Lanier and Percy Herron searched the cell assigned to the plaintiff and inmate Robert Anderson. The plaintiff suggests that this search may have been in retaliation for his having filed the grievance. As best the court can ascertain from the plaintiff's complaint and the exhibits attached thereto, it appears that the plaintiff was instructed to enter an empty cell to which he was not assigned. He refused to enter the empty cell without his personal property, and, because of that refusal, was escorted to segregation. Prison logs reflect that he was escorted to segregation at 10:55 a.m. on March 12, 2012, and actually placed in segregation at 11:18 a.m. that day. Thereafter, he was issued two "fraudulent falsified" disciplinary infractions by defendant Herron. The first was issued at 3:45 p.m. on March 12, for refusal of cell assignment. The second, for possession of a deadly weapon, was issued at 10:16 p.m. on March 12, 2012.

Two days later, on March 14, 2012, the plaintiff was escorted from segregation to a hearing on these two infractions, before the prison Disciplinary Board, which consisted of defendants Taylor, Cambree, McKinnie, and Butler. The charge of refusal of cell assignment was dismissed due to a time discrepancy (that is, the plaintiff was in segregation at the time he was alleged to have refused the cell assignment). A hearing on the weapons infraction was conducted beginning at 9:10 a.m., and the plaintiff was found guilty of the infraction by the Board, despite evidence presented by the plaintiff that the knife was his cellmate's and not his. After being found guilty, the plaintiff was sentenced to fifteen days of punitive segregation, twelve months of package restriction, a $5.00 fine, and six days' deduction of behavior credits.

The plaintiff attempted to appeal the finding of guilty on the weapons infraction. He submitted his appeal documents promptly. Approximately six weeks later, on May 2, 2012, he received a response from Deputy Commissioner Woodall notifying him that his appeal was dismissed on the basis that his documentation indicated he had pleaded guilty to the infraction and had thereby waived his right to appeal it. The plaintiff immediately sought reconsideration from the Deputy Commissioner, informing him that he had never pleaded guilty, that he had pleaded not guilty instead and gone through a full hearing with the

Disciplinary Board, and that if the documents in his file indicated he had pleaded guilty, they were incorrect. The plaintiff received a second response again noting that no further action would be taken based on the plaintiff's having pleaded guilty to the subject infraction. In his letter to the Deputy Commissioner, the plaintiff stated that he had spoken with chairperson of the disciplinary committee concerning the "errors/mistakes she made on [his] plea," but she did not know how to correct the problem. (ECF No. 1, at 66.)

The plaintiff alleges that these actions violated his constitutional right to due process. He seeks monetary damages from the various defendants. It is not clear whether he also seeks injunctive relief that would permit him to pursue an appeal of the disciplinary action.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed *in forma pauperis* that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous. Section 1915A(a) similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled

allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**III.     ANALYSIS AND DISCUSSION**

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Claims against entities or individuals who are not state actors and "persons" subject to suit under § 1983 must be dismissed. Claims that do not state a deprivation of a right secured by the Constitution or federal law must likewise be dismissed.

**A.     The Claims against TDOC and the State Officials in their Official Capacity**

As an initial matter, the plaintiff's claims against the Tennessee Department of Correction must be dismissed because TDOC is not a "person" subject to suit under § 1983. Instead, TDOC is an agency of the State of Tennessee and, as such, is entitled to Eleventh Amendment immunity. *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997); *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988). The Eleventh Amendment bars suits against a state, and its agencies or departments, unless the state has waived its immunity or Congress has abrogated it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). The sovereign immunity protected by the Eleventh Amendment extends to claims for injunctive relief and other forms of equitable relief. *See Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief."). The only exceptions to a State's immunity are (1) if the State has consented to suit or (2) if Congress has properly abrogated a State's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Neither of these exceptions applies to § 1983 suits against the State of Tennessee or its agencies. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (reaffirming that Congress did not abrogate states' immunity when it passed § 1983). The claims against TDOC are therefore subject to dismissal.

In addition, to the extent the various state officials (including, at a minimum, Commissioner Schofield, Deputy Commissioner Woodall, Program Specialist Hoff and Commissioner Designee Butler) are sued in their official capacity for damages, these claims must be "treated as suits against the State," *Hafer v. Melo*,

502 U.S. 21, 25 (1991), because in an action against a state officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Therefore, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, to the extent the plaintiff pursues damages claims against any state-employee defendants in their official capacity, those claims are subject to dismissal.

Insofar as the complaint may be construed to seek prospective injunctive relief against the state officials in their official capacity, to compel them to comply with federal law, such claims are not barred by the Eleventh Amendment. *See Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (noting that an exception set forth in *Ex parte Young* allows for "actions against state officials sued in their official capacity for prospective injunctive or declaratory relief"); *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003) (holding that, if a plaintiff's complaint against state officials is "based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them, . . . it . . . does not come under the doctrine of *Ex parte Young*"). However, to state an official-capacity claim under § 1983 of the type that might entitle him to injunctive relief, the plaintiff nonetheless needs to show that there is a direct causal link between the alleged constitutional violation and an official policy or custom adopted by the official makers of the policy with "deliberate indifference" toward the constitutional rights of persons affected by the policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The Sixth Circuit has held that to establish such a causal link, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)). The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Here, the plaintiff has not identified any policy or custom on the part of the State itself that resulted in a deprivation of the plaintiff's constitutional rights. The plaintiff therefore is not entitled to injunctive relief against any state employees based on their implementation or execution of such policies or customs. The plaintiff's official-

capacity claims for injunctive relief are therefore also subject to dismissal for failure to state a claim upon which relief may be granted.

**B.     The Claims against CCA**

With respect to the claims against CCA, the court observes that the plaintiff has not alleged any specific unconstitutional conduct by the entity, CCA; rather, he apparently relies on the fact that CCA is the employer of the various prison officials who are named as defendants. It is well settled, however, that a defendant cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory of liability. *Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995) (citation omitted). That is, the right to direct or control employees, by itself, is insufficient to impose liability upon a defendant for the unconstitutional acts of subordinates. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727–28 (6th Cir. 1996). Instead, as with the official-capacity claims discussed above, in order for CCA to be subject to liability under § 1983, the plaintiff must allege and show that there is a direct causal link between the alleged constitutional violation and an official policy or custom that was adopted by CCA's policy-makers, with "deliberate indifference" toward the constitutional rights of persons affected by the policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). As stated above, to establish such a causal link, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

The plaintiff here does not identify any CCA policy or show that he suffered an injury of constitutional dimension as a result of the execution of such policy. Consequently, the facts alleged by the plaintiff are insufficient to show liability on the part of CCA. The claims against that defendant are therefore subject to dismissal for failure to state a claim upon which relief may be granted.

Likewise, the "official capacity" claims against the various CCA employees are tantamount to claims against CCA itself. Because the plaintiff fails to state a colorable claim against CCA, the official-capacity claims against the CCA officials are subject to dismissal as well.

**C.     The Claims against Commissioner Schofield, Deputy Commissioner Woodall, Inmate Specialist Janice Hoff, and Commissioner Designee Jeff Butler**

With respect to Deputy Commissioner Woodall, the plaintiff alleges that his response to the plaintiff's

-7-

Case 3:12-cv-00893   Document 7   Filed 09/26/12   Page 7 of 9 PageID #: 168

grievance appeals was unsatisfactory, and made no attempt to address what the plaintiff contended were violations of his due process rights. Similarly, the plaintiff alleges that he wrote to Commissioner Schofield to inquire why he had not received a response to the appeal of one of his grievances. The plaintiff alleges that Commissioner Schofield "stood with Deputy Commissioner Woodall['s] response . . . as well as Commissioner Designee Jeff Butler. Never once did anyone in the Tennessee Department of Correction take the initiative to inquire or investigate the numerous violations of C.C.A./HC.C.F. employees." (ECF No. 1, at 9.) In addition, the plaintiff alleges that Woodall refused to consider his appeal of the disciplinary infraction on the basis that his documentation showed he had pleaded guilty to the infraction and waived his right to appeal.

The plaintiff alleges that he wrote a letter to TDOC Inmate Specialist Janice Hoff explaining his situation, and prison officials' violations of state law as it pertains to assigning inmates to jobs inside the prison. He alleges that Ms. Hoff wrote him a letter in response that was vaguely dismissive of his concerns and failed to address the alleged statutory and regulatory violations set forth in his letter.

The court finds that the plaintiff fails to state a claim against these TDOC officials in their individual capacity. The law is clear that allegations of direct involvement in constitutional deprivations are necessary in order to hold an individual defendant liable under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92(1978). Consequently, unless the plaintiff's complaint affirmatively pleads the personal involvement of a defendant in the allegedly unconstitutional action about which the plaintiff is complaining, the complaint fails to state a claim against that defendant and dismissal is warranted. *Cf. Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). This rule holds true even if the supervisor has actual knowledge of the constitutional violation, as long as the supervisor did not actually participate in or encourage the wrongful behavior. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials cannot be held liable under § 1983 for failing to respond to grievances which alert them of unconstitutional actions); *see also Stewart v. Taft*, 235 F. Supp. 2d 763, 767 (N.D. Ohio 2002) ("[S]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.").

Here, the only "action" upon which the plaintiff's claims against defendants Schofield, Woodall, Butler and Hoff are based is their failure to act in responding to the plaintiff's letters and grievance appeals.

Because the plaintiff does not allege that these defendants independently took any action that violated his constitutional rights, the claims against them in their individual capacity will be dismissed.

### D. The Remaining Claims

Construed very liberally, the complaint asserts claims against the remaining defendants in their individual capacity based on actions that allegedly violated the plaintiff's due process rights under the Fourteenth Amendment, both in connection with the plaintiff's attempts to be put to work, and in the deprivation of the plaintiff's right to appeal the disciplinary charge against him. In addition, the plaintiff appears to be alleging that Lake and Henson retaliated against him for filing grievances against them, and that the disciplinary infractions were initially issued in retaliation for his having filed a number of prison grievances, in violation of his First Amendment rights. Although it is unclear at this stage whether the plaintiff will be able to prevail on any of his claims—and the court expresses no opinion with regard to the merits of the plaintiff's claims—the court finds that the plaintiff has adequately alleged the deprivation of rights protected by the constitution, by persons acting under color of state law, as required to state a claim under 42 U.S.C. § 1983. These claims against the remaining defendants in their individual capacity will therefore be permitted to proceed.

## IV. CONCLUSION

For the reasons set forth herein, the claims against TDOC and CCA will be dismissed for failure to state a claim, as will the official-capacity claims against the individual defendants, and all claims against defendants Schofield, Woodal, Hoff, and Butler.

An appropriate order will enter.

Aleta A. Trauger
United States District Judge